IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LATRON DUPREE BROWN, ) | |
| ) | |
|    Petitioner, ) | Civil Action No. 7:19-cv-00497 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| HOWARD W. CLARKE, DIRECTOR, ) |     United States District Judge |
| VIRGINIA DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | |
|    Respondent. ) | |

**MEMORANDUM OPINION**

In 2016, petitioner Latron Dupree Brown pleaded guilty in state court to six counts of distribution of cocaine, possession of a firearm while in possession of drugs, possession of a firearm by a felon within ten years, and obstruction of justice. Brown was sentenced to 152 months in prison, with all but fifteen years and six months suspended. (Dkt. No. 12-1.)

Before the court is Brown's petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. The respondent moves to dismiss. (Dkt. No. 10.) For the reasons stated below, respondent's motion to dismiss will be granted, and Brown's petition will be denied.

I. BACKGROUND

In state court, Brown entered a conditional plea, which allowed him to appeal the trial court's denial of his motion to suppress evidence based on an alleged illegal search of his residence. On appeal, the Court of Appeals of Virginia held that the trial court did not err by denying Brown's motion to suppress. Brown also argued that the trial court erred by holding that he had waived representation by counsel. The court of appeals held that Brown waived this argument by the entry of his guilty plea. *Brown v. Commonwealth*, 802 S.E.2d 197 (Va. Ct. App. 2017). The Supreme Court of Virginia refused Brown's petition for an appeal. (Dkt. No. 12-3.)

On August 9, 2018, Brown filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. (Dkt. No. 12-4.) Brown alleged the following claims in his state court petition: (1) officers conducted an illegal protective sweep of his residence; (2) denial of right to assistance of counsel when the court found that Brown had waived his right to counsel when Brown asked for the removal of his attorneys; (3) denial of right to effective assistance of counsel when counsel failed to investigate, allowed an external impediment to preclude a certain defense, failed to object to a date set outside of the speedy trial statute, and subpoenaed the wrong phone number; and (4) denial of right to proceed without interference by standby counsel when standby counsel advised Brown to take a plea offer and passed Brown a note from the courtroom that read "take the plea." (*Id.*) The court dismissed the petition on March 27, 2019. (*Id.*)

## II.  ANALYSIS

### A.  AEDPA Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) circumscribes a federal court's ability to issue a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(d). Under AEDPA, a federal court may not grant habeas relief on a claim that the state postconviction court rejected on the merits unless that court's determination "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2), or "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1).

A state court's decision involves an unreasonable application of such clearly established law when the court "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). By

"clearly established," § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.  And to be "unreasonable," the state court's application of that law must be "objectively unreasonable," not simply incorrect.  *Barnes v. Joyner*, 751 F.3d 229, 238–39 (4th Cir. 2014); *see also Williams*, 529 U.S. at 412 ("[A]n *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.") (emphasis in original).  Otherwise stated, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In enacting AEPDA, Congress thus recognized that federal courts "owe state tribunals significant deference" with respect to their determination that a state prisoner is not entitled to habeas relief.  *Bennett v. Stirling*, 842 F.3d 319, 323 (4th Cir. 2016).  Indeed, AEDPA "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction." *Harrington*, 562 U.S. at 102.  While the court's standard of review by no means "preclude[s] relief" or "impl[ies] abandonment or abdication of judicial review," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), it does mean that we may not "second-guess the reasonable decisions of state courts," *Renico v. Lett*, 559 U.S. 766, 779 (2010).

### B. Ineffective Assistance of Counsel

When reviewing ineffective assistance of counsel claims by state prisoners, the court's deference contains an additional layer through the "highly deferential" lens of *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012). AEDPA and *Strickland* thus provide "dual and overlapping" lenses of deference, which are applied "simultaneously rather than sequentially." *Id.*  And because "[s]urmounting *Strickland*'s high bar is

3

never an easy task," it is "all the more difficult" to establish "that a state court's application of *Strickland* was unreasonable ... under § 2254(d)." *Morva v. Zook*, 821 F.3d 517, 528 (4th Cir. 2016). "This double-deference standard effectively cabins . . . review" to determining "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

To establish ineffective assistance of counsel under *Strickland*, a defendant must satisfy two standards: (1) "that counsel's performance was deficient," and (2) that counsel's deficient performance "prejudiced the defense." 466 U.S. at 687. The first prong, deficient performance, requires a showing "that counsel's representation fell below an objective standard of reasonableness," as measured by "prevailing professional norms" and in light of "all the circumstances" of the representation. *Id.* at 688. While such professional norms may be "reflected in American Bar Association [ABA] standards and the like," such guides are just that—"only guides"—for determining what constitutes reasonable representation in a given case, *id.* at 688, and no fixed set of rules may "take account of the variety of circumstances faced by defense counsel," *id.* at 688–89.

In assessing counsel's performance, the court's scrutiny "must be highly deferential." *Id.* at 689. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," and "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission ... was unreasonable," *Strickland* cautions that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time." *Id.* Courts therefore must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In all, the "critical question" is whether counsel's performance "amounted to incompetence under prevailing

professional norms, not whether it deviated from best practices." *Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012).

Once a defendant has established that counsel's performance was deficient, he must then prove that counsel's deficient performance prejudiced his defense under *Strickland*'s second prong. In the effective assistance context, prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability, in turn, is one "sufficient to undermine confidence in the outcome." *Id.* When applying this test to the guilty plea process, the Supreme Court has held that, to show prejudice, the Petitioner "must show that there is a reasonable probability that, but for counsel's errors, [the Petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### C. Brown's Claims

Brown alleges the following claims in his § 2254 petition: (1) denial of right to be free from unreasonable search and seizure when officers conducted an illegal protective sweep of his residence; (2) denial of right to assistance of counsel when the court found that Brown waived his right to counsel by requesting the removal of his attorneys; (3) denial of right to effective assistance of counsel when counsel failed to investigate, allowed an external impediment to preclude a certain defense, failed to object to a date set outside of the speedy trial statute, and subpoenaed the wrong phone number; and (4) denial of right to proceed without interference by standby counsel when standby counsel advised Brown to take a plea offer and passed Brown a note from the courtroom that read "take the plea." (Habeas Pet., Dkt. No. 1.)

#### 1. Claim one: Fourth Amendment

A freestanding Fourth Amendment allegation is not cognizable on federal habeas review. *See Stone v. Powell*, 428 U.S. 465, 482 (1976). Rather, a petitioner can proceed with his Fourth

Amendment claims only if he can show that he was denied a full and fair opportunity to pursue his Fourth Amendment claims in state court. *Stone*, 428 U.S. at 494; *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978) (applying *Stone* and holding that where a state court provides a mechanism under state practice to litigate Fourth Amendment claims, then this court "need not inquire further into the merits of the petitioner's case ... unless the prisoner alleges something to indicate his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired").

Brown raised this issue in state court and received a full and fair suppression hearing. *See Brown*, 802 S.E.2d at 199–200 (describing testimony at suppression hearing). He then raised the issue on direct appeal, but the court of appeals rejected Brown's argument, finding that "the protective sweep did not taint the issuance of the search warrant and that the circuit court did not err when it denied Brown's motion to suppress." *Id.* at 202. Brown does not argue that the suppression hearing was unfair or that he was limited in the presentation of witnesses or other evidence. Therefore, Brown's Fourth Amendment will be dismissed.

### 2. Claim two: denial of right to counsel

Brown claims that he was denied his Sixth Amendment right to assistance of counsel when the trial court found that Brown waived his right to counsel by asking for the removal of his attorneys. The state habeas court found that Brown waived this claim by pleading guilty. (Dkt. No. 12-4 at 2.)

Brown's claim is based on *Faretta v. California*, 422 U.S. 806 (1975), which held that an accused has a Sixth Amendment right to conduct his own defense, provided that he knowingly and intelligently forgoes his right to counsel. *Id.* at 835. Most federal circuit courts, including the Fourth Circuit, "treat a *Faretta* challenge exactly like any other non-jurisdictional challenge, holding that a defendant waives his self-representation claim by entering a knowing and voluntary

6

unconditional guilty plea." *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (collecting cases including *United States v. Moussaoui,* 591 F.3d 263, 279–80 (4th Cir.2010)). In *Werth*, the Sixth Circuit recognized that only one federal court—the Ninth Circuit—along with a number of California courts, have held that a defendant who pleads guilty unconditionally may still maintain a *Faretta* challenge on appeal. *Id.* at 496 (citing *United States v. Hernandez*, 203 F.3d 614, 626–27 (9th Cir. 2000)). This disagreement, the court reasoned, demonstrates that "fairminded jurists could (and do) debate whether a defendant waives his right to self-representation by entering a knowing and voluntary unconditional plea. Under AEDPA, this is enough." *Id.* (citing *Harrington*, 526 U.S. at 101). So, too, it is here: the state court's conclusion that Brown's guilty plea foreclosed his *Faretta* challenge did not violate clearly established Supreme Court precedent.

### 3. Claim three: ineffective assistance of counsel

In these claims, Brown makes the following assertions regarding the performance of his counsel:

#### a. Attorney "failed to investigate after discovery was made available to her"

The state court found that the "record, including the transcript of a May 27, 2015 hearing when [attorney] Commander still represented petitioner, and a hearing on June 23, 2015, demonstrates counsel 'spent numerous hours in the Commonwealth's attorney's office' over at least five visits reviewing the Commonwealth's files." (Dkt. No. 12-4 at 2–3.) Also, Brown did not "specify what counsel failed to investigate nor does he specify what evidence he expected counsel to have obtained." (*Id.* at 3.) Thus, the court found that Brown "failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different." (*Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).)

7

In response to the motion to dismiss, Brown argues that further investigation would have discovered that officers conducted an illegal search before seeking a search warrant. (Pet'r's Resp. 14, Dkt. No. 17.) This evidence, according to Brown, would have further substantiated that officers used a protective sweep as a fishing expedition to find evidence in violation of the Fourth Amendment. (*Id.*) Thus, Brown argues that he would have proceeded to trial instead of accepting the guilty plea. (*Id.*) Brown offers no specific details or evidence, only speculation about what further investigation would have uncovered and the effect of discovering this unknown evidence. Moreover, Brown does not counter the state court's reasoning that Brown's counsel spent numerous hours reviewing files. Under the "double-deference" standard the court must apply, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Morva*, 821 F.3d at 528.

### b. Attorney allowed an "external impediment" to preclude Brown from constructing a defense

The state court found that Brown did not "identify the defense he would have constructed, but for counsel's inability to receive collect calls when she was out of the office or to visit him during inclement weather, nor does he articulate what counsel could have done to overcome these impediments." (Dkt. No. 12-4 at 3.) Brown emphasizes that he had difficulty communicating with his counsel on numerous occasions, causing a breakdown in communication which adversely affected her preparation for the suppression hearing and in preparing for trial. (Pet'r's Resp. 15.) As in state court, Brown does not identify the evidence or line of defense he would have cultivated, much less demonstrate how it would have been successful. The state court's rejection of this claim was not contrary to or an unreasonable application of *Strickland*.

### c. Attorney failed to raise a speedy trial objection

The state court explained that Brown "appears to assert that counsel should have objected when, after a December 16, 2014 suppression hearing, the trial was set for June 23, 2015." (Dkt.

8

No. 12-4 at 4.) After recounting the procedural history of Brown's pretrial proceedings (*id.* at 4–6), the state court explained that Brown did not identify any grounds upon which counsel could have objected to the trial date, "nor does he identify any reason why counsel would have wished to do so, given petitioner's request for co-counsel and the likelihood that Phillips would require time to familiarize herself with the case. Similarly, petitioner fails to articulate any prejudice resulting from the continuance." (*Id.* at 6.)

Brown argues that he is attacking the validity of his conviction because his attorneys did not properly assert and preserve his speedy trial rights. (Pet'r's Resp. 19.) The continuances in Brown's case, however, were caused by Brown, who was constantly sparring with his attorneys, forcing them to withdraw or obtain co-counsel. In August 2014, for example, the Commonwealth explained to the trial court that "speedy trial was not an issue because of petitioner's actions in requesting two prior appointed lawyers to withdraw." (Dkt. No. 12-4 at 5.) In addition, the following occurred at a May 2015 motions hearing:

> At the beginning of the hearing, the Commonwealth asked the court to consider several pro se motions petitioner had filed and 'some issues with the defendant' that Commander wished to address first. The court informed petitioner it would not consider his pro se motions because he had counsel, then inquired of Commander if she wished to have co-counsel appointed, given the number of charges then pending against petitioner. Commander advised the court she did not feel a need for co-counsel but petitioner was not satisfied with Commander's representation and 'feels that there needs to be co-counsel.' Commander also asked that the hearing on the Commonwealth's motion in limine be continued. The court agreed to appoint co-counsel and appointed Phillips. *The court advised petitioner that the speedy trial clock had not run as petitioner had either agreed to every continuance or had done something to cause the case to be continued,* that co-counsel was being appointed and the case was being continued to June 23, 2015, but if co-counsel was not available, the continuance would not be charged against the Commonwealth. *Petitioner indicated he understood and stated, 'I thought I've been waiving my speedy trial.'*

(Dkt. No. 12-4 at 5–6 (emphasis added).)

9

Brown argues that the record does not establish that he waived his right to a speedy trial (Pet'r's Resp. 17), but the facts set forth in the state court's opinion, "presumed to be correct," 28 U.S.C. § 2254(e)(1), in federal court, clearly demonstrate that Brown agreed to the continuances, and Brown has not met his "burden of rebutting the presumption of correctness by clear and convincing evidence," *id.* Thus, the state court's resolution of this claim was not based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. Nor was it an unreasonable application of *Strickland* for the state court to find that counsel was not ineffective in failing to raise a speedy trial objection when the delays were caused by Brown's own conduct.[1]

### d. Attorney subpoenaed records for incorrect phone number

The state court rejected this claim under *Strickland*'s prejudice prong, reasoning that Brown did not "articulate what information he hoped to glean from these phone records, state that he did not eventually obtain this information, or identify any other specific prejudice stemming from this alleged error." (*Id.* at 7.) In response, Brown argues that if the correct phone records were subpoenaed, the records would have revealed that none of the phone recordings the Commonwealth was proposing to use at trial were connected to Brown. (Pet'r's Resp. 21.) Thus, the phone records would have been suppressed as inadmissible, and Brown would have proceeded to trial instead of pleading guilty. (*Id.* at 22–23.) Brown's argument is mere speculation, unsupported by any factual evidence which undermines the state court's reasoning that foregoing a guilty plea was not reasonably probable. *See Lowery v. Warden*, Civil Action No. 9:09-2352-CMC-BM, 2010 WL 2347033, at *5 (D.S.C. May 20, 2010) ("Petitioner has also failed to show that, even if his counsel

---

[1] In a related claim, Brown argues that he asked counsel Phillips to move to dismiss on speedy trial grounds, and Phillips provided him with unspecified false information. The state court denied this claim because Phillips did not "articulate the nature of the false information with which Phillips allegedly provided him or to identify any resulting prejudice." (Dkt. No. 12-4 at 7.) For many of the same reasons, this adjudication was not based on an unreasonable determination of factors or an unreasonable application of *Strickland*.

10

had further investigated, he would not have proceeded with the guilty plea. To the contrary, other than his own unsupported speculation, Petitioner has offered no evidence to show how any further pre-trial investigation would have helped his case."). Such speculation does not establish the absence of any reasonable argument that Brown still would have pled guilty instead of proceeding to trial.

### 4. Claim four: constitutional right to proceed pro se

Brown alleges that he was denied his right to proceed pro se without interference when his standby counsel asked to speak with him before trial, advised him to accept a plea offer, and passed him a note that read "take the plea." The state court rejected this claim because Brown "failed to offer a valid reason why he should not be bound by his representation at trial that his guilty plea was voluntary and there is no evidence identified by petitioner that would support the contrary conclusion that the plea was involuntary." (*Id.* at 8.) As noted above, the Supreme Court has held that an accused has a Sixth Amendment right to conduct his own defense, provided that he knowingly and intelligently forgoes his right to counsel, *Faretta*, 422 U.S. at 835, and most federal circuit courts, including the Fourth Circuit, "treat a *Faretta* challenge exactly like any other non-jurisdictional challenge, holding that a defendant waives his self-representation claim by entering a knowing and voluntary unconditional guilty plea." *Werth*, 692 F.3d at 495. Thus, the state court's resolution of this claim is not contrary to, or an unreasonable application of, clearly established federal law.

The state court also reasoned that the claim could have been raised at trial and on direct appeal, and, thus, is not cognizable in a habeas corpus action. (*Id.*) Therefore, the claim is procedurally defaulted in federal court. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) ("If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state

procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.").

### C. Certificate of Appealability

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. *See* Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 338; *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012).

The court declines to issue a certificate of appealability because Brown has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's merits and procedural rulings to be debatable or wrong.

### III. CONCLUSION

For these reasons, the court will deny Brown's § 2254 petition, grant the respondent's motion to dismiss, and decline to issue a certificate of appealability. The court will issue an appropriate order.

Entered: September 29, 2020.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge